# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DIAMOND BLAIR, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:23-CV-00189 AGF |
| BRIAN BOYER, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is defendants' motion to revoke plaintiff's in forma pauperis status pursuant to 28 U.S.C. § 1915(g). Defendants seek to dismiss this action unless plaintiff can pay the full $402 filing fee. Because plaintiff properly alleged at the time he filed the instant complaint that he was in "imminent danger of serious physical injury," the Court will decline to revoke plaintiff's in forma pauperis status and deny defendants' motion. Defendants answer to the complaint is due to the Court no later than twenty-one (21) days from the date of this Memorandum and Order.

## Plaintiff's Complaint

Plaintiff's complaint, with exhibits, memoranda, motions, proposed orders and declarations numbers over one-hundred pages. *See* ECF No. 1. Unfortunately, plaintiff's complaint is somewhat difficult to restate. The Court will do its best to summarize his allegations in a cogent manner.

Plaintiff Diamond Donnell Blair was an inmate at Eastern Reception Diagnostic and Correctional Center (ERDCC) at the time he filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on February 16, 2023. [ECF No. 1]. He brought this action against seven individuals

employed by the Missouri Department of Corrections (MDOC) at ERDCC, as well as three MDOC employees at the central office in Jefferson City, Missouri. The defendants are listed as follows: Brian Boyer (Functional Unit Manager); Anne Precythe (Director, MDOC); Jeff Norman (Deputy Division Director, MDOC); Richard Adams (Warden); Crystal Schmemitz (Central Transfer Administrator, MDOC); Michael Miller (Case Manager, ERDCC); Edmund Jennings (Case Manager ERDCC); Timothy Sellars (Sergeant); Tim Freeman (Assistant Warden); Chris Neiman (Constituent Services Officer).

Plaintiff asserts that he had been assigned to Protective Custody ("the PC Unit") at ERDCC. However, on the afternoon of August 16, 2022, Correctional Officer Ava Smith came to his cell and ordered him to go with him into the Housing Unit A/B side of the sallyport. [ECF No. 1, p. 8]. Once there, he was met by Correctional Officer Timothy Sellars who told plaintiff he was transferring him into the Administrative Segregation (Ad-Seg) Unit. During the transfer plaintiff was told by Officer Smith that he was being placed under investigation, referred to as "UNIV Status," per the orders of the shift commander, which plaintiff took to mean defendant Boyer. Plaintiff was then placed in Housing Unit 2D-118 of the Ad-Seg Unit.

Plaintiff claims that he was placed in Ad-Seg by Boyer in retaliation for "filing complaints regarding safety concerns of GP [general population] inmates housed with PC [protective custody] inmates. . ." In his IRR, plaintiff asserts that prior being placed into Ad-Seg, his name had been placed on a "Kick-Out"[1] list by defendant Boyer and placed in the control bubble's window so that all inmates could see as "an act of intimidation and warning." [ECF No. 1, p. 9].

Plaintiff alleges that he was issued a conduct violation (CDV) on or about September 8, 2022, while he was in Ad-Seg. He attached a copy of the CDV to his complaint. [ECF No. 1, p.

---

[1]Plaintiff describes a "Kick-Out" list as a list of names of inmates that staff wanted removed the PC Unit.

2

81]. The CDV was issued by defendant Boyer for a violation of Regulation 19.1 – An action that threatens custody. It states:

> During a camera review, offender Blair, Diamond #186595 was observed coming out of A-Wing into the A/B sallyport and running over to B-Wing door to throw a laundry bag into B-Wing. Upon retrieving the bag, it was discovered to be filled with several canteen items. This places offender in violation of 19.1 Creating a Disturbance, 24.4 Contraband and 30.1 Out of Bounds.
>
> Note: Property removal attached and all items were forwarded to the property room.
>
> Violation delayed due to investigation of further wrong doing [sic].

*Id.*

After reviewing the CDV, Edmund Jennings found plaintiff guilty of the CDV and recommended that he be restricted from phone calls for sixty (60) days, be put on thirty (30) days canteen restriction (be given hygiene only) and be given twenty (20) days of Disciplinary Segregation (Dis-Seg). Functional Unit Manager Michael Miller approved the restrictions with the added modification of referring plaintiff to Ad-Seg for attempting to introduce contraband into Ad-Seg. *Id.*

Plaintiff asserts, in a conclusory manner, that defendants Boyer, Jennings and Miller have "an unwritten policy and procedure to refer inmates on the PC Unit who receive conduct violations to Dis-Seg and Ad-Seg." [ECF No. 1, p. 12]. He claims that once these inmates are in Dis-Seg, the inmate is made to serve "indefinite hole time" if he should seek a PC assignment after he is released from Ad-Seg and referred to the PC Review Committee. Plaintiff alleges that defendant Boyer, Miller, Jennings and Sellars chair and sit on the PC Review Committee and intentionally prolong an inmate's "hole time" because they do not want that inmate in the PC Unit. *Id.*

In his IRR, plaintiff additionally asserted that he believed that his CDV hearing was a violation of his due process rights. He claimed that the hearing was presided over by defendant

3

Jennings, who answered to defendant Boyer. When plaintiff told Jennings he had not received a copy of the CDV, Jennings said he would have to ask his boss, Boyer, about that. Additionally, defendant Miller signed off as the acting Functional Unit Manager on his CDV, and plaintiff asserted that Miller also answered to defendant Boyer.

Plaintiff alleges that on September 27, 2022, he appeared before the PC Review Committee which was chaired by defendant Boyer. [ECF No. 1, p. 14]. Plaintiff does not indicate who else was sitting on the PC Review Committee at that time,[2] and he has not provided the Court with a copy of his Classification Hearing Form. Plaintiff states that in the PC Review Hearing defendant Boyer told him that he would not be returning to the PC Unit. *Id.* Boyer allegedly continued plaintiff's stay in the Ad-Seg Unit at that time for thirty (30) days.[3]

Plaintiff had a PC Committee Hearing on October 25, 2022, in front of Michael Miller, Edmund Jennings and Mathew McFarland. [ECF No. 1, p. 15]. Plaintiff has not provided the Court with a copy of his Classification Hearing Form, however, in his complaint he claims that Miller asked him at the hearing what he wanted to do. [ECF No. 1, pp. 14-15]. Plaintiff asserts that he asked for transfer to the PC Unit.

Plaintiff alleges that at the October hearing, Miller looked through four pages of his listed enemies, counting through the enemies plaintiff had at each MDOC institution. Miller allegedly stated, "Your brother won't be here, and you're not going back to PC. We don't want you over there. So, get that out of your mind." Plaintiff claims that Miller then typed in a submission to transfer plaintiff to another institution. Miller gave plaintiff an additional ninety (90) days in Ad-

---

[2]Plaintiff made the conclusory allegation in his complaint that the PC Review Committee is often made up of Boyer, Miller, Jennings and sometimes Sellars. [ECF No. 1, p. 13].

[3]The Court takes judicial notice that in plaintiff's IRR, ERDCC 22-1802, he asserted that when he was in front of the PC Review Committee on September 27, 2022, he signed a PC request form and was then told that he was going to be assigned to Ad-Seg for an additional (30) days pending PC review. [ECF 1, p. 15].

Seg. Plaintiff believes that he was given the additional time because he requested a transfer to the PC Unit. *Id.* Plaintiff also claims he was not given a fair and impartial hearing due to the PC Review Committee's makeup including Miller and Jennings.[4]

On October 26, 2022, plaintiff filed an IRR, ERDCC 22-1803, asserting that he had sought a copy of his TASC Order and "subsequent CDV" report for approximately ten (10) weeks. However, on that same date, he had received a "falsified TASC Order" and "erroneous CDV" which he believed deprived him of due process. Plaintiff sought dismissal of his CDV and transfer back to the PC Unit. [ECF No. 1, pp. 86-87].

In his IRR plaintiff also asserted that in a hearing held before defendants Miller, Jennings and Mathew McFarland on October 25, 2022, relative to his PC needs, he was told by defendant Miller that "You're not going to PC. . .We're not going to let you waive the people there who declared you an enemy. . .Do you want to waive enemies at other camps? See where we can send you. . .You have 3 pages of listed enemies every 5 camp. . ." Plaintiff alleges that when he refused to waive his enemies, pointing out that he had previously had a hit ordered on him by prison threat groups, "he was arbitrarily assigned a continued 90 days to the Ad-Seg Unit." He asserts that white inmates with similar or more serious CDVs were sentenced to less time in the Ad-Seg Unit than he was.

On November 18, 2022, plaintiff filed an IRR, ERDCC 22-1900, asserting that he had been transferred to the Ad-Seg Unit on August 16, 2022, and placed on TASC without due process. Similarly, he alleged defendant Boyer gave him a CDV on September 8, 2022 and had defendants

---

[4]Plaintiff alleges that the additional time in the Administrative Segregation Unit, the denial of PC and the transfer to another MDOC facility were all done in retaliation. He claims that because he had filed complaints against Miller, Boyer and Jennings previously, these actions were retaliatory and could place plaintiff's life at risk by facilitating transfer to a different facility. It does appear that plaintiff attempted to waive several individuals in PC who had designated him on their enemy list at that time. *See* Plaintiff's IRR ERDCC 22-1783. [ECF No. 1, pp. 95-96].

Jennings and Miller hold a hearing without due process on the CDV on September 12, 2022. [ECF No. 1, pp. 86-87]. Plaintiff further alleged that on September 27, 2022, he appeared before the PC Review Committee, including in front of Committee Chairman Boyer, and he asked for placement back into PC. Boyer told him that he would not be returning to PC at that time, and he assigned plaintiff to thirty (30) days of Ad-Seg while review was being done on his PC request.

On November 21, 2022, plaintiff filed an IRR, ERDCC 22-1802, asserting that he had been denied fair and impartial hearings on three occasions in 2022: (1) August 16, 2022, when plaintiff was first placed in the Administrative Segregation Unit/on TASC; (2) September 27, 2022, when plaintiff was in front of the Protective Custody Review Committee and "coerced by defendant Boyer" to sign a PC request form and Boyer then assigned plaintiff to Ad-Seg for thirty (30) days pending PC review; and (3) October 25, 2022, when plaintiff was in front of the PC Review Committee and the decision to continue plaintiff's Ad-Seg assignment was already printed on the form.

The summary of findings from the Hearing Form indicates that plaintiff has one unwaived enemy in General Population, four unwaived enemies in Ad-Seg and one unwaived enemy in the PC Unit.[5] The Committee concluded that there was no viable housing option for plaintiff at ERDCC other than Ad-Seg. Thus, transfer seemed appropriate; however, plaintiff was awaiting approval for transfer from "CTA."[6] The Committee recommended transfer, but until plaintiff could be transferred, the recommendation was to keep plaintiff in Ad-Seg. *Id.*

---

[5]Plaintiff disagrees with the assertion on the Hearing Form that he had an unwaived enemy in the PC Unit. He claims that his "listed enemy in the PC Unit, David Gary, was transferred into the Ad-Seg Unit in January of 2025. [ECF No. 1, p. 49]. He asserts that Gary told him that defendant Miller placed plaintiff's name on his enemy list as a "means to block" plaintiff and his brother from being transferred into the PC Unit. Plaintiff does not indicate how and when he had the means to speak to inmate David Gary when they were both single celled in the Ad-Seg Unit.

[6]The acronym "CTA" stands for Central Transfer Authority.

Plaintiff asserts that he was denied the right to impartial decisionmakers at his PC Review Committee Hearings because they were made up of the same individuals who assessed his CDV hearing. [ECF No. 1, pp. 17-18]. Additionally, defendant Boyer told plaintiff at his January 17, 2023, PC Review Committee Hearing, "You make it personal by filing your complaints." [ECF No. 1, p. 17]. Plaintiff also points to Jennings' assertion at his CDV hearing where he stated, "Boyer is the boss," as evidence that Jennings was unable to act with impartiality. *Id.*

Plaintiff additionally claims that defendants Boyer, Miller and Sellars placed plaintiff in an "imminently dangerous" situation by falsifying a CDV against him, falsely declaring an individual in PC his enemy to block his return to PC, continuing plaintiff's stay in Ad-Seg and placing him on the transfer list. [ECF No. 1, pp. 18-19].

Last, plaintiff asserts that defendants Boyer, Miller, Jennings and Sellar treat Caucasian inmates with preferential treatment with respect to assigning them to the PC Unit. [ECF No. 1, pp. 19-20]. He claims that some white inmates are encouraged to sign enemy waivers so that they may transfer from Ad-Seg into the PC Unit. These inmates may have been assigned to Ad-Seg for CDVs worse than plaintiff's, however, they are still moved from the Ad-Seg Unit and into the PC Unit while black inmates are denied movement into the PC Unit. *Id.*

Based on the foregoing allegations, the Court interpreted plaintiff's claims for relief as follows. Plaintiff alleges three due process violations, including that he was denied due process under the Fourteenth Amendment: (1) when he was transferred from the PC Unit to the Ad-Seg Unit by Officer Timothy Sellars, per the alleged orders of Commander Boyers, on August 16, 2022, based on UNIV status at ERDCC; (2) during his September 12, 2022 CDV hearing at ERDCC; and (3) during his stay in Ad-Seg at ERDCC.

7

Plaintiff alleges he was subjected to retaliation in violation of the First Amendment at ERDCC: (1) when he was moved from the PC Unit on August 16, 2022 and placed in the Ad-Seg Unit at the direction of Commander Boyer; (2) when he was found guilty of a false conduct violation on September 12, 2022; (3) when he was not transferred to the PC Unit after he served his time in Dis-Seg and Ad-Seg on the CDV on September 27, 2022, October 25, 2022 and January 17, 2022; and (4) when he was subjected to a retaliatory transfer to JCCC.

Last, plaintiff alleges that he was discriminated against based on his race, African American. He claims that defendants Boyer, Miller, Jennings and Sellar treat Caucasian inmates with preferential treatment with respect to assigning them to the PC Unit. And he additionally seeks a preliminary injunction to stop the named defendants from retaliating against him in an arbitrary manner by "transferring him into an imminently dangerous environment" into General Population at ERDCC from Ad-Seg. He states that he has multiple enemies at ERDCC and faces a high risk of being assaulted or murdered if he is forced into General Population. The Court was mindful that plaintiff sued the defendants in both their individual and official capacities.

**Procedural Background**

Plaintiff, Diamond Blair, appearing pro se and in forma pauperis, commenced this action under 42 U.S.C. § 1983 alleging violations of his civil rights. At the time plaintiff filed the action on February 16, 2023, plaintiff was incarcerated at ERDCC in Bonne Terre, Missouri. However, when the Court reviewed the action pursuant to 28 U.S.C. § 1915 on August 4, 2023, plaintiff had been transferred to Crossroads Correctional Center (CRCC) in Cameron, Missouri.[7] In the

---

[7]Plaintiff was transferred by MDOC from ERDCC - first to Jefferson City Correctional Center (JCCC) on February 7, 2023, where he was kept in Administrative Segregation, and then he was transferred to CRCC on or about April 7, 2023. Plaintiff informed the Court on April 28, 2023, that despite requesting PC at CRCC, he was placed in Administrative Segregation at CRCC. *See* ECF No. 12.

complaint, plaintiff alleges that several MDOC employees violated his constitutional rights while he was incarcerated at ERDCC.

After reviewing plaintiff's complaint under § 1915 for frivolousness, maliciousness and for failure to state a claim, the Court granted plaintiff in forma pauperis status, ordered plaintiff to pay an initial partial filing fee of $8.37, dismissed a myriad of plaintiff's claims for relief and issued process on the following: (1) First Amendment retaliation claims against defendant Brian Boyer in his individual capacity as to plaintiff's claims of retaliatory transfer to Administrative Segregation on August 16, 2022 and giving plaintiff a false conduct violation and (2) First Amendment retaliation claims against defendants Brian Boyer, Michael Miller, Timothy Sellars and Edmund Jennings in their individual capacities as to plaintiff's claims for retaliatory denial of return to the Protective Custody Unit on three occasions and retaliatory transfer to JCCC.

After issuing process on defendants Brian Boyer, Michael Miller, Timothy Sellars and Edmund Jennings, the defendants moved, on October 3, 2023, to revoke plaintiff's in forma pauperis status and to require plaintiff to pay the full filing fee in this action pursuant to 28 U.S.C. § 1915(g). Defendants argue that plaintiff has "three strikes" and cannot proceed without full payment of the filing fee in compliance with the Prison Litigation Reform Act.

## Discussion

### A. Legal Standard Under 28 U.S.C. § 1915(g)

Under 28 U.S.C. § 1915, this Court may authorize the commencement of a civil action without prepayment of the filing fee "by a person who submits an affidavit that includes a statement of all such assets such prisoner possesses," and that indicates "that the person is unable to pay such fees." *See* 28 U.S.C. § 1915(a)(1).

9

However, the Prison Litigation Reform Act (PLRA) "enacted a variety of reforms designed to filter out the bad [prisoner] claims and facilitate consideration of the good." *Jones v. Bock*, 549 U.S. 199, 204 (2007). One of these reforms is what is commonly known as the "three strikes" provision of 28 U.S.C. § 1915(g). *Orr v. Clements*, 688 F.3d 463, 464 (8th Cir. 2012). Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This section does not apply unless the inmate litigant has three strikes at the time he filed his lawsuit or appeal. *Campbell v. Davenport Police Dep't*, 471 F.3d 952, 952 (8th Cir. 2006).

Prisoners who have had three previous civil lawsuits or appeals dismissed as frivolous, malicious, or for failure to state a claim must prepay the entire filing fee. *Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir. 1997). Nevertheless, pursuant to 28 U.S.C. § 1915(g), an indigent inmate who has acquired three strikes may still file a lawsuit if he is under imminent danger of serious physical injury. *Higgins v. Carpenter*, 258 F.3d 797, 800 (8th Cir. 2001). This exception provides a "safety valve for the three strikes rule to prevent impending harms." *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003). For this exception to apply, an otherwise ineligible prisoner must be in imminent danger ***at the time of filing***. *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998) (emphasis added). Allegations of past imminent danger are not sufficient to trigger the exception to § 1915(g). *Id*. Furthermore, the prisoner must present "specific fact allegations of ongoing

10

serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Martin*, 319 F.3d at 1050.

1. **Plaintiff's Purported Strikes**

Defendants have alleged that plaintiff had five prior actions dismissed for failure to state a claim. Accordingly, they seek to revoke plaintiff's in forma pauperis status on the basis of § 1915(g). Defendants cite to the following cases as strikes for plaintiff: *Blair v. Gish*, No. 4:93-CV-0054 SNL (E.D. Mo); *Blair v. Dept. of Corr.,* No. 4:93-CV-00931 ELF (E.D.Mo.); *Blair v. United States*, No. 4:10-CV-1154 HFS (W.D.Mo); *Blair v. Walters*, No. 4:21-CV-627 JAR (E.D.Mo); and *Blair v. Glore*, No. 4:20-CV-1591 SEP (E.D.Mo). The Court will examine each case in turn.

The first two cases listed by defendants were brought by plaintiff in 1993 in this Court, and unfortunately, the Court does not have access to the Court Orders in those cases to ascertain whether they were dismissed as frivolous, malicious or for failure to state a claim pursuant to 28 U.S.C. § 1915. *See Blair v. Gish*, No. 4:93-CV-0054 SNL (E.D. Mo) and *Blair v. Dept. of Corr.,* No. 4:93-CV-00931 ELF (E.D.Mo.). In fact, from the Court's docket, it appears that plaintiff may have moved to voluntarily dismiss the case of *Blair v. Dept. of Corr.,* No. 4:93-CV-00931 ELF (E.D.Mo.), prior to the adoption of the Report and Recommendation in that case. Thus, the Court is unable to find that these cases were strikes under § 1915(g).

While it is true that *Blair v. United States*, No. 4:10-CV-1154 HFS (W.D.Mo) appears to count as a strike under § 1915, as it was dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994),[8] unfortunately *Blair v. Walters*, No. 4:21-CV-627 JAR (E.D.Mo), cannot count as a strike because

---

[8]*See Armentrout v. Tyra,* 175 F.3d 1023 (8th Cir. 1999) (per curiam) (indicating that a dismissal under *Heck v. Humphrey* constitutes a strike).

11

it contained multiple grounds for relief, including res judicata, the *Rooker-Feldman* doctrine, sovereign immunity and failure to plead actionable claims.

When a case is dismissed on immunity grounds, the Court cannot find that the action is a strike under § 1915(g). *See Castillo–Alvarez v. Krukow*, 768 F.3d 1219, 1219–20 (8th Cir. 2014) (per curiam) (dismissals based on immunity are not among types of dismissals listed as strikes under section 1915(g); dismissal was not strike where court determined that only the named defendant was entitled to prosecutorial immunity, and did not state action was frivolous, malicious, or failed to state claim).

Further, in applying section 1915(g), courts have focused on the dismissal of the entire complaint or case, not on the dismissal of claims. *See Tolbert v. Stevenson*, 635 F.3d 646, 649–55 (4th Cir. 2011) (collecting cases for proposition that "action" in § 1915(g) unambiguously means entire case or suit and thus that inmate's entire action or appeal must be dismissed on one or more of enumerated grounds to qualify as strike); *see also Orr v. Clements*, 688 F.3d 463, 466 (8th Cir. 2012) (citing *Tolbert* for proposition that "action" under § 1915(g) means "entire 'case' or 'suit'"). As such, the Court is only able to say with certainty that *Blair v. United States*, No. 4:10-CV-1154 HFS (W.D.Mo) is a strike under § 1915(g).

The last case cited by defendants was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) based on res judicata. *See Blair v. Glore*, No. 4:20-CV-1591 SEP (E.D.Mo). The Court does not customarily count Federal Rule of Civil Procedure 12(b)(6) dismissals as strikes under 1915(g). And defendants have not cited to any caselaw in the Eighth Circuit expounding on such a practice.

The Court is aware of the recent Supreme Court case of *Lomax v. Ortiz-Marquez*, 140 S.Ct. 1721, 1725-1726 (2020), holding that regardless of whether a dismissal is with prejudice or

without prejudice, the dismissal of a prisoner's civil lawsuit, for failure to state a claim, counts as a strike under the PLRA's "three-strikes" rule. And some courts have utilized the holding in *Lomax* to count dismissals for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) as strikes under § 1915(g). *See Fate v. New York*, No. 19-CV-4107 (CS), 2021 WL 1177966 (S.D. NY, March 26, 2021); *Gradford v. Webster*, No. 1:22-cv-01493-JLT-HBK (PC), 2023 WL 2976236 (E.D. Cal. April 17, 2023); *Griffin v. Carnes*, 72 F.4th 16 (2nd Cir. 2023); and *Washington v. Gilmore,* 825 Fed.Appx. 58 (3rd Cir. 2020). Nonetheless, the Court has been unable to find an instance in the Eighth Circuit where a court has adopted this practice, and defendants cite to no such cases in their brief.

It is true that § 1915(g) is broader than the prior version of the in forma pauperis statute, which sought to deter only frivolous or malicious actions. *See Lomax*, 140 S. Ct. at 1726 (stating that in passing the PLRA, Congress "chose to go further" than the previous version of the IFP statute); *cf. Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989) (distinguishing dismissals as frivolous under the IFP statute and dismissals for failure to state a claim under Rule 12(b)(6) and noting that "not all unsuccessful claims are frivolous"). Thus, it may also follow that a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) should be counted the same as the "failure to state a claim" dismissals under § 1915.

However, it matters not whether the case of *Blair v. Glore*, No. 4:20-CV-1591 SEP (E.D.Mo) can be considered a strike in this instance, as even if the case could be counted, it would only be plaintiff's second strike. Additionally, as set forth below, the Court believes that plaintiff adequately pleaded he was in imminent danger at the time of the filing of the complaint such that he should be allowed to proceed in forma pauperis in this matter.

13

### 2. Imminent Danger "At the Time of Filing"

As stated, *supra*, § 1915(g) provides an exception to the "three-strike" rule when "the prisoner is under imminent danger of serious physical injury." The law is settled that whether a plaintiff falls within this exception is to be judged ***at the time of the filing of the complaint***. *Martin*, 319 F.3d at 1050 (emphasis added); *Charron v. Allen*, 37 F.4th 483, 486 (8th Cir. 2022).

At the time plaintiff filed his complaint on February 16, 2023, he was incarcerated at ERDCC. As noted in the complaint and plaintiff's declaration attached to the complaint, he alleged that there were documented threats to his life by "prison threat groups," including those from "Al-Islam Muslims, Black Fam and the Crips, Bloods." *See* ECF No. 1 pp. 18-19. 45-46; *see also* ECF No. 1, pp. 50-52, "Plaintiff's Memorandum of Law in Support of his Motion for Preliminary Injunction."

Plaintiff recounted that when he had been at South Central Correctional Center, he was attacked twice in 2015, resulting in substantial injuries from stabbings. *Id*. at pp. 45-46, 50-52. In August of 2017, plaintiff was transferred to Potosi Correctional Center (PCC) where he was then placed in the general population despite his request for PC. *Id.* In his first six months at PCC, he was attacked twice and finally moved to the PC Unit at PCC in May or June of 2018. *Id.*

Further, he alleged in this case that he had a plethora of enemies and that defendants knew about the enemies, not just at ERDCC, but also at the other MDOC prisons. His enemy list spanned at least four pages, and as a result, according to plaintiff's allegations in his complaint, defendants found it difficult to find a place to transfer plaintiff to in order to keep him away from his listed enemies. Defendants allegedly asked him to waive enemies at certain MDOC facilities, but they refused to let him waive enemies in the PC Unit at ERDCC. *See supra*.

Plaintiff alleged that by moving him from the PC Unit at ERDCC in purported retaliation, defendants were placing his life in imminent danger of another attack, and that by threatening him with transfer to another facility, he feared for his safety, given the severity of the attacks at other MDOC facilities and the number of listed enemies he had at other facilities. *Id*. and ECF No. 1, pp. 18-19, 44-49. He specifically denoted defendants knew of the previous attacks at SCCC and PCC, knew he had over 100 listed enemies, including enemies in four major gangs in the MDOC system, and yet, defendants were deliberately indifferent to his need for protective custody. In fact, plaintiff alleged that he had litigated a similar issue against MDOC employees at SCCC. *See, e.g., Blair v. Terry*, No. 6:15-03532-CV-S-RK, 2017 WL 6273084 (W.D. Mo. Dec. 8, 2017); *Blair v. Terry*, No. 6:15-03532-CV-S-RK, 2018 WL 10322914 (W.D. Mo. Jan. 31, 2018); *Blair v. Bowersox*, 929 F.3d 981 (8th Cir. 2019).

Although plaintiff had been transferred to JCCC and then CRCC by the time the Court reviewed his complaint in August of 2023, he complained in a "Motion to Prosecute" filed on April 28, 2023, ECF No 12, that upon his transfer to JCCC he was assaulted by an inmate who was a member of one of the "threat groups" he named in his complaint. *Id.* at p. 2. Additionally, plaintiff asserted that although he sought PC at CRCC in April of 2023 due to "known enemies," he was again denied PC and instead placed in Administrative Segregation.

The Eighth Circuit has indicated that past harms, as well as those going forward, can show an ongoing pattern of acts which can constitute imminent danger. *See McAlphin v. Toney*, 281 F.3d 709, 711 (8th Cir.2002); *Ashley*, 147 F.3d at 717. This Court took plaintiff's allegations of imminent danger, his past serious assaults at SCCC and PCC, as well as his allegation that he was attacked when he was transferred to JCCC, into account when deciding to allow plaintiff to proceed in forma pauperis in this action.

15

These assaults, along with the fact that the Court was unable to access the prior Court Orders from the 1993 actions in *Blair v. Gish*, No. 4:93-CV-0054 SNL (E.D. Mo); *Blair v. Dept. of Corr.,* No. 4:93-CV-00931 ELF (E.D.Mo.), as well as the Court's inability to additional strikes for plaintiff, were the deciding factors in deciding not to strike plaintiff under § 1915(g). As such, the Court will decline to grant defendants' motion to revoke plaintiff's in forma pauperis status at this time.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to revoke plaintiff's in forma pauperis status and require plaintiff to pay the full filing fee in this action pursuant to 28 U.S.C. § 1915(g) [ECF No. 20] is **DENIED**.

**IT IS FURTHER ORDERED** that defendants shall file an answer to plaintiff's complaint no later than twenty-one (21) days from the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that an appeal of the denial of this Order shall not be taken in good faith.

Dated this 11th day of December, 2023

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE